**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | | |
|---|---|---|
| DERECK CASE, individually, and as representative of a Class of Participants and Beneficiaries of the Generac Power Systems, Inc. Employees 401(k) Savings Plan, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:21-cv-01100-PP |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAC POWER SYSTEMS, INC., and THE BOARD OF DIRECTORS OF GENERAC POWER SYSTEMS, INC., and JOHN DOES 1-30, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Bernard J. Bobber
Kevin J. Kinney
Ogletree, Deakins, Nash, Smoak &
  Stewart, P.C.
1243 North 10th Street, Suite 200
Milwaukee, WI 53205
Telephone: 414.239.6300
Fax: 414.755.8289
bernard.bobber@ogletree.com
kevin.kinney@ogletree.com

Deborah S. Davidson
Morgan, Lewis & Bockius LLP
110 North Wacker Drive
Chicago, IL 60606
Telephone: 312.324.1159
Fax: 312.324.1001
deborah.davidson@morganlewis.com


Jeremy P. Blumenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Fax: 215.963.5001
jeremy.blumenfeld@morganlewis.com


*Attorneys for Defendants*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   RELEVANT FACTUAL BACKGROUND .......................................................... 4

      A.    Generac Power Systems, Inc. ................................................................. 6

      B.    Plaintiff and His Plan Investments. ....................................................... 8

III.  ARGUMENT ........................................................................................................ 8

      A.    Plaintiff's Complaint Fails To State A Plausible Claim Under ERISA ........... 8

            1.    Plaintiff Does Not Plausibly Allege That Defendants Breached
                  Their Fiduciary Duty of Prudence ........................................................ 10

                  a.    The Plan Offered Many of the Funds Plaintiff Endorses
                        as "Prudent"; In Any Event, ERISA Does Not Prohibit
                        the Offering of Actively-Managed Funds. ............................. 11

                  b.    Plaintiff Cannot State a Viable Claim of Imprudence
                        Based On Inappropriate Comparisons Of Investment
                        Management Fees in Actively-Managed Versus
                        Passively-Managed Funds. ...................................................... 13

                  c.    Plaintiffs' Preference For Different Share Classes Of
                        Certain Funds Fails To State A Viable Claim. ....................... 15

                  d.    Plaintiff's Challenge To The Plan's Administrative And
                        Recordkeeping Fee Structure Fails To State A Viable
                        Claim. ..................................................................................... 18

            2.    Plaintiff Fails To State A Plausible Breach-Of-Loyalty Claim. ........ 23

            3.    Plaintiff Fails To State A Plausible Failure-To-Monitor Claim. ........ 23

      B.    This Court Lacks Subject Matter Jurisdiction Under Fed. R. Civ. P.
            12(b)(1) Over Most of Plaintiff's Claims Due to Lack of Article III
            Standing. ................................................................................................. 24

            1.    Applicable Legal Standards. ............................................................... 24

            2.    Plaintiff Suffered No Harm From The Plan's Investments And
                  Thus Lacks Standing To Pursue Any Investment-Related
                  Claims. ................................................................................................ 25

IV.   CONCLUSION ................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
   No. 20-901, 2021 WL 3932029 (E.D. Wis. Sept. 2, 2021) (Griesbach, J.),
   *appeal filed*, No. 21-2789 (7th Cir. Oct. 1, 2021) ................................................*passim*

*Amgen Inc. v. Harris*,
   577 U.S. 308 (2016) ................................................................................................. 10

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
   572 F.3d 440 (7th Cir. 2009) ..................................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 9, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 9, 23

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ................................................................................... 12

*Brown v. Daikin Am., Inc.*,
   No. 18-11091, 2021 WL 1758898 (S.D.N.Y. May 4, 2021) ................................ 19, 21

*Conkright v. Frommert*,
   559 U.S. 506 (2010) ................................................................................................. 10

*David v. Alphin*,
   817 F. Supp. 2d 764 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013).................. 26

*Davis v. FEC*,
   554 U.S. 724 (2008) ................................................................................................. 24

*Davis v. Wash. Univ.*,
   960 F.3d 478 (8th Cir. 2020)..................................................................................... 14

*Dezelan v. Voya Ret. Ins. & Annuity Co.*,
   No. 16-1251, 2017 WL 2909714 (D. Conn. July 6, 2017) ............................................ 26

*Divane v. Nw. Univ.*,
   953 F.3d 980 (7th Cir. 2020), *cert. granted sub nom., Hughes v. Nw.
   Univ.*, 141 S. Ct. 2882 (2021) ..................................................................................*passim*

ii

*Divane v. Nw. Univ.*,
    No. 16-8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018), *aff'd*, 953 F.3d
    980 (7th Cir. 2020) ................................................................................................ 13

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................................. 9

*Enos v. adidas America, Inc.*,
    No. 19-1073, R&R slip op. (D. Or. Aug. 26, 2021) ............................................... 14

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014) ......................................................................................... 9, 10

*Forman v. TriHealth, Inc.*,
    --- F. Supp. 3d ----, 2021 WL 4346764 (S.D. Ohio Sept. 24, 2021) ................ 16, 18

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
    858 F. App'x 432 (2d Cir. 2021) ............................................................................ 26

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .......................................................................... *passim*

*Hecker v. Deere & Co.*,
    569 F.3d 708 (7th Cir. 2009) .................................................................................. 19

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) .................................................................................. 23

*Johnson v. PNC Fin. Servs. Grp.*,
    No. 20-1493, 2021 WL 3417843 (W.D. Pa. Aug. 3, 2021) ..................................... 22

*Klawonn v. Bd. of Dirs. for the Motion Picture Indus. Pension Plans*,
    No. 20-9194, 2021 WL 3508534 (C.D. Cal. Aug. 9, 2021) ..................................... 14

*Kong v. Trader Joe's Co.*,
    No. 20-05790, 2020 WL 7062395 (C.D. Cal. Nov. 30, 2020), *appeal filed*,
    No. 20-56415 (9th Cir. Dec. 30, 2020) ............................................................. 12, 19

*Lange v. Infinity Healthcare Physicians*,
    No. 20-737, 2021 WL 3022117 (W.D. Wis. July 16, 2021) ............................. 4, 5, 25

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ................................................................................................ 25

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) .................................................................................... 7

iii

*Loomis v. Exelon*,
658 F.3d 667 (7th Cir. 2011)........................................................*passim*

*Marks v. Trader Joe's Co.*,
No. 20-05790, 2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ............................................. 5

*Martin v. CareerBuilder, LLC*,
No. 19-6463, 2020 WL 3578022 (N.D. Ill. July 1, 2020).............................. 10, 14, 22, 23

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018)........................................................ 14

*Patterson v. Morgan Stanley*,
No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)................................ 5, 24, 26

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011)........................................................ 13

*Rogers v. Baxter Int'l, Inc.*,
710 F. Supp. 2d 722 (N.D. Ill. 2010) ........................................................ 23

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
No. 15-cv-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F.
App'x 3 (2d Cir. 2017)........................................................ 12

*Smith v. Commonspirit Health*,
No. 20-95, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) .................................................. 14

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ........................................................ 24

*St. John's United Church of Christ v. City of Chi.*,
502 F.3d 616 (7th Cir. 2007)........................................................ 5

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan
v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)........................................................ 9

*Stanley v. George Wash. Univ.*,
394 F. Supp. 3d 97 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir.
2020) ........................................................ 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................ 5

*Thole v. U.S. Bank Nat'l Ass'n*,
140 S. Ct. 1615 (2020) ........................................................ 4, 25, 26

iv

*Tibble v. Edison Int'l*,
729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523
(2015) ...................................................................................................... 13

*Tobias v. NVIDIA Corp.*,
No. 20-06081, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) ............. 17, 19, 22

*United Transp. Union v. Gateway W. Ry. Co.*,
78 F.3d 1208 (7th Cir. 1996) .................................................................... 5

*White v. Chevron Corp.*,
752 F. App'x 453 (9th Cir. 2018) .............................................................. 9

*White v. Chevron Corp.*,
No. 16-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ............... 12, 13, 22

*White v. Chevron Corp.*,
No. 16-0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752 F.
App'x 453 (9th Cir. 2018) ........................................................... 7, 16, 20

*Wilcox v. Georgetown Univ.*,
No. 18-422, 2019 WL 132281 (D.D.C. 2019) .................................... 26

*Yost v. First Horizon Nat'l Corp.*,
No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011) ................ 26

*Young v. Gen. Motors Invest. Mgm't Corp.*,
325 F. App'x 31 (2d Cir. 2009) .......................................................... 22

**Statutes**

ERISA Section 3(34), 29 U.S.C. § 1002(34) ....................................... 6

ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ...................... 10

ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2) .............................. 25

**Other Authorities**

Dep't of Labor, A Look at 401(k) Plan Fees (Sept. 2019),
https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-
activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last
visited October 11, 2021) ......................................................................... 18

v

Dep't of Labor, Employee Benefits Security Administration, *Tips for Selecting and Monitoring Service Providers for Your Employee Benefit Plan*, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/tips-for-selecting-and-monitoring-service-providers.pdf (last visited October 11, 2021) ..................................................... 18

Dep't of Labor, Employee Benefits Security Administration, 2018 Instructions for Form 5500, available at: https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2018-instructions.pdf ............................... 21

Dep't of Labor, Maximize Your Retirement Savings – Tips on Using the Fee and Investment Information From Your Retirement Plan, https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/maximize-your-retirement-savings.pdf (last visited October 11, 2021) ......................................................... 7

Dep't of Labor, Understanding Retirement Plan Fees and Expenses (Dec. 2011) https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses.pdf (last visited October 11, 2021) ............................................................. 6

Fed. R. Civ. P. 12(b)(1) ....................................................................... 4, 24, 26

Fed. R. Civ. P. 12(b)(6) .................................................................................. *passim*

vi

# I.      **INTRODUCTION**

This lawsuit is one of more than a dozen filed in the Eastern District of Wisconsin by the same plaintiffs' attorneys within the last year, and the third assigned to this Court.[1]  In all of these cases, plaintiffs allege class-wide ERISA claims against 401(k) plan fiduciaries based on theories that the Seventh Circuit has rejected as "paternalistic."  *E.g.*, *Loomis v. Exelon*, 658 F.3d 667, 673 (7th Cir. 2011); *see also Divane v. Nw. Univ.*, 953 F.3d 980 (7th Cir. 2020), *cert. granted sub nom., Hughes v. Nw. Univ.*, 141 S. Ct. 2882 (2021); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009).  The gist of these lawsuits is that the only prudent way to manage a retirement plan is to offer the cheapest investments available in the market and to pay the plan's administrative expenses through a per-participant flat-fee structure.

This case follows the same pattern.  Plaintiff Dereck Case is a participant in the Generac Power Systems, Inc. Employees 401(k) Savings Plan ("the Plan").  He alleges that Defendants Generac Power Systems, Inc. ("Generac") and the Board of Directors of Generac

---

[1] In addition to the two other cases pending before this Court, *see Shaw v. Quad/Graphics, Inc.*, No. 1:20-cv-1645-PP (E.D. Wis. filed Oct. 30, 2020), and *Bangalore v. Froedert Health, Inc*., No. 2:20-cv-893-PP (E.D. Wis., filed June 12, 2020), there is a third that is assigned to Judge Ludwig in the Milwaukee Division, *see Woznicki v. Aurora Health Care, Inc*., No. 2:20-cv-1246-BHL (E.D. Wis., filed Aug. 14, 2020).  Plaintiff's counsel filed the other eight cases in the Green Bay Division.  *See Albert v. Oshkosh Corp.*, No. 1:20-cv-901-WCG (E.D. Wis., filed June 16, 2020); *Soulek v. Costco Corp*., No. 1:20-cv-937-WCG (E.D. Wis., filed June 23, 2020); *Cotter v. Matthews Int'l Corp*., No. 1:20-cv-1054-WCG (E.D. Wis., filed July 13, 2020); *O'Driscoll v. Plexus Corp*., No. 1:20-cv-1065-WCG (E.D. Wis., filed July 14, 2020); *Nohara v. Prevea Clinic, Inc*., No. 2:20-cv-1079-WCG (E.D. Wis., filed July 16, 2020); *Glick v. Thedacare, Inc*., 1:20-cv-1236-WCG (E.D. Wis., filed Aug. 12, 2020); *Laabs v. Faith Techs., Inc.*, No. 1:20-cv-1534-WCG (E.D. Wis., filed Oct. 2, 2020); *Guyes v. Nestle USA Inc.*, No. 1:20-cv-1560-WCG (E.D. Wis., filed Oct. 9, 2020).  Additionally, outside of this district, Plaintiff's counsel filed at least two similar cases in other Seventh Circuit courts.  *See Marvin v. Mercy Health Corp*., No. 3:20-cv-50293 (N.D. Ill., filed Aug. 6, 2020) (voluntarily dismissed on Aug. 28, 2020); *Lange v. Infinity Healthcare Physicians, S.C.*, No. 3:20-cv-737 (W.D. Wis., filed Aug. 7, 2020).

1

Power Systems Inc. ("the Board") (collectively, "Defendants") breached ERISA's fiduciary duties of loyalty and prudence, and also their obligation to monitor other fiduciaries, because: (1) the Plan offered participants the option to invest in actively-managed mutual funds instead of restricting the investment menu to lower-cost passively-managed funds;[2] (2) the Plan did not offer what Plaintiff deemed to be the lowest-cost share class in four funds; and (3) the Plan allegedly paid retirement plan services ("RPS") fees that were too high. These allegations are insufficient to state a claim for relief under Rule 12(b)(6) based on Seventh Circuit case law.

**First**, the Plan offered many of the exact funds Plaintiff identifies as "prudent investment alternatives" throughout most of the alleged class period. *See infra* at 11. As for the other funds he challenges, an ERISA plaintiff cannot state an imprudence claim merely because the Plan offered actively-managed investments, and a Plaintiff cannot survive a motion to dismiss by identifying less expensive passively-managed funds he would have preferred. *See, e.g.*, *Hecker*, 556 F.3d at 586 (explaining that ERISA does not require retirement plan fiduciaries to "find and offer the cheapest possible fund[.]"); *Divane*, 953 F.3d at 989 (plan participants cannot coopt ERISA to mandate their own "benefit program preferences" or "guarantee[] … their own preferred investment options); *Albert v. Oshkosh Corp.*, No. 20-901, 2021 WL 3932029, at *6-7 (E.D. Wis. Sept. 2, 2021) (Griesbach, J.), *appeal filed*, No. 21-2789 (7th Cir. Oct. 1, 2021) (finding complaint's comparisons showing

---

[2] Actively-managed funds "try to find and buy underpriced securities while selling ones that the advisers think are overvalued," and such funds "allow rapid turnover both in the funds' holdings and the participants' investments." *Loomis*, 658 F.3d at 670. The associated work and resources typically render actively-managed funds a bit more costly than passively-managed "index funds," which "do not make any independent investment choices but simply track a designated portfolio such as the Standard & Poor's 500 Index." *Id.* at 669-70.

2

actively-managed funds had higher fees than passively-managed funds could not state a viable claim).

**Second,** the Seventh Circuit has ruled that alleging a plan failed to use the lowest-cost share class of a particular investment, as Plaintiff alleges here, fails to state a claim for imprudence. *See, e.g.*, *Divane*, 953 F.3d at 992 (rejecting theory that plan should not have offered retail share classes and reiterating that "plans may generally offer a wide range of investment options and fees without breaching any fiduciary duty"); *Loomis*, 658 F.3d at 670-72 (rejecting contention that only "institutional" share classes should be offered and no retail share classes). Moreover, Plaintiff misstates the share classes offered by the Plan and the fees paid for the share classes at issue, as confirmed by the participant fee disclosures upon which he relies.

**Third,** Plaintiff's claim for allegedly excessive RPS fees fares no better. The Seventh Circuit rejected the same sort of allegations about excessive recordkeeping and administrative fees paid for by revenue sharing in *Hecker*, 556 F.3d at 585-86; *Loomis*, 658 F.3d at 672-73 (noting that a flat fee per capita structure could harm younger employees and those with less assets); and again in *Divane*, 953 F.3d at 990-91 (explaining that there is "nothing wrong … with plan participants paying recordkeeper costs through expense ratios," and holding that the defendant was not required to search for a recordkeeper willing to accept the per-participant amount plaintiffs thought was prudent). Plaintiff cannot plausibly allege imprudence by comparing the RPS fees paid by the Generac Plan to a cherry-picked group of other plans of different sizes, or similar size that have received different services. *See, e.g.*, *Albert*, 2021 WL 3932029, at *5. Moreover, the $90 average annual RPS fee that Plaintiff

3

calculated (which includes investment management fees) falls well below the "$153 to $213 per year" that the Seventh Circuit has held to be reasonable for recordkeeping services alone. *Divane*, 953 F.3d at 984, 990-91.

**Fourth,** Plaintiff's ancillary claims are equally implausible and without merit. Plaintiff cannot state a claim for breach of ERISA's duty of loyalty or duty to monitor appointed fiduciaries simply by trying to recast the same allegations that underpin his imprudence claims.

**Fifth,** while the Court should dismiss the Complaint in its entirety under Rule 12(b)(6), Plaintiff also lacks the requisite Article III standing to pursue most of his claims, thus compelling dismissal under Rule 12(b)(1). Under the Plan, each participant's benefit is based on the performance and fees of the investments in his or her individual account. But Plaintiff did not invest in a single fund that he challenges as imprudent. To the contrary, the only fund in which he invested, the Vanguard Institutional Target Retirement 2035 fund, is a *lower* fee share class than one of the investments he states *is* prudent, Compl. ¶ 173, so he has suffered no harm as to that fund. Merely alleging harm *to the Plan* does not confer constitutional standing. *See Thole v. U.S. Bank Nat'l Ass'n*, 140 S. Ct. 1615, 1620 (2020). Accordingly, the Court should dismiss Plaintiff's investment-related claims for this reason as well. *See, e.g.*, *Lange v. Infinity Healthcare Physicians*, No. 20-737, 2021 WL 3022117, at *3-4 (W.D. Wis. July 16, 2021) (dismissing similar claims due to lack of Article III standing where plaintiff did not challenge the one fund in which she invested).

## II.   RELEVANT FACTUAL BACKGROUND

The summary below comes from Plaintiff's allegations, materials that are referenced in or central to the Complaint, or publicly available materials subject to judicial notice, which

4

all may be considered when ruling on a motion to dismiss pursuant to Rule 12(b)(6). *See e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Hecker*, 556 F.3d at 582-83. Here, the Court may consider Forms 5500 filed with the Department of Labor ("DOL"), and the Plan's 404a-5 and 408(b)(2) fee disclosures mandated by ERISA, all of which were relied upon and incorporated into the Complaint, as well as take judicial notice of publicly available prospectuses. *See, e.g.,* Compl. ¶¶ 104, 139, 155, 192 (relying on and incorporating 404a-5 and 408(b)(2) fee disclosures and Form 5500s); *Hecker*, 556 F.3d at 582-83 (prospectuses and related material); *Marks v. Trader Joe's Co.*, No. 20-05790, 2020 WL 2504333, at *4 (C.D. Cal. Apr. 24, 2020) (*inter alia*, Form 5500s); *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019) (fee disclosures).

Because Defendants' standing arguments are jurisdictional in nature, the Court may also consider extrinsic evidence on those arguments, such as the Declaration of Cheryl Brand ("Brand Decl."). *See, e.g., United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996) (court can properly consider "evidentiary materials addressed to the jurisdictional question … at the dismissal stage."); *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) ("[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."); *Lange*, 2021 WL 3022117, at *2 ("standing is a question of subject-matter jurisdiction" allowing it to consider any extrinsic evidence). "Once such evidence is proffered, the presumption of correctness

5

that we accord to a complaint's allegations falls away, and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks and citations omitted).

### A. Generac Power Systems, Inc.

Generac manufactures "power products in the marketplace, including portable, residential, commercial and industrial generators." Compl. ¶ 19. Generac provides its employees with a range of benefits, including the ability to save for retirement through the Plan. The Plan is an individual-account, defined-contribution plan under ERISA, 29 U.S.C. § 1002(34). *Id.* ¶ 25. As such, participants decide how to invest their contributions by choosing from a menu of investment options. Throughout the putative class period, the Plan has offered a diverse menu totaling 43 different investment options (at least 21 at any given point in time) that cover different asset classes (*e.g.*, stocks, bonds, stable-value options), investment styles (*i.e.*, actively-managed funds and passive "index" funds), and risk-reward profiles. *See* Exs. 1-7, 2015-2021 404a-5 Discls.

Like all 401(k) plans, there are expenses associated with the Plan. There are investment-management fees, which are "ongoing charges for managing the assets in the investment fund"; there are also administrative and recordkeeping fees that encompass the "day-to-day" expenses for "administrative services … necessary for administering the plan as a whole." *See* Dep't of Labor, Understanding Retirement Plan Fees and Expenses 3, 5 (Dec. 2011), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses.pdf (last visited October 11, 2021).

6

Investment-management fees are expressed in the form of an "expense ratio" for each investment—*i.e.*, a percentage-based deduction against a participant's total assets in the investment. For instance, a participant who invests $1,000 in a fund with an expense ratio of 0.18% pays an annual fee of $1.80 ($1,000 x 0.0018). *See* Dep't of Labor, Maximize Your Retirement Savings – Tips on Using the Fee and Investment Information From Your Retirement Plan 3, https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/maximize-your-retirement-savings.pdf (last visited October 11, 2021). As to administrative and recordkeeping fees, plan participants typically pay those costs: (1) through "revenue sharing" from the investments' expense ratios; (2) as a direct participant fee; or (3) through a combination of these methods. Revenue sharing is "an arrangement allowing mutual funds to share a portion of the fees that they collect from investors with entities that provide services to the mutual funds" like recordkeepers. *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 907-08 (7th Cir. 2013); *Divane*, 953 F.3d at 989 n.9.[3] For instance, if an investment's expense ratio is 0.75%, the investment manager could choose to pay, or "share," a portion of the 0.75% fee, or "revenue," it collects with the plan's recordkeeper for services it provides. Compl. ¶ 56. If the agreement were that the investment manager would pay 0.25% of the total 0.75% to the recordkeeper, that 0.25% would be the revenue sharing amount. *Id.* Under a revenue-sharing model, "[t]he

---

[3] Mutual funds may offer different "share classes," including "retail" share classes, where investors pay the same expenses as the public, and "institutional" share classes, which are typically for larger, institutional investors and charge slightly lower expense ratios. *Loomis*, 658 F.3d at 670. Retail share classes typically use a portion of their fees to pay revenue sharing. *See, e.g.*, *White v. Chevron Corp.*, No. 16-0793, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) ("*White II*"), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (recognizing that a plan fiduciary used retail share class funds to "pa[y] the Plan's recordkeeping expenses").

amount of fees paid [are] within the participants' control because they [can] choose which funds to invest the money in their account." *Divane*, 953 F.3d at 991 n.10.  Here, the Plan has at all relevant times offered a range of low-cost investment options.  In 2015, the Plan offered investments with expense ratios that ranged from 0.07% to 1.34%, and in 2021 the Plan's investment options were offered at even lower fees ranging from 0.02% to 1.33%. *See* Exs. 1-7 (2015-2021 participant fee disclosures).

Transamerica, the Plan recordkeeper, charges a fee for recordkeeping that is a percentage of all assets held in Plan investment options.  *See* Exs. 1-7 (2015-2021 404a-5 disclosures at p.F2).  The maximum recordkeeping fee percentage during the period between 2015 and 2021 ranged from a high of 0.30% annually of all assets held in Plan investments to a low of 0.17% of all assets held in Plan investments in 2020 and 2021. *See* Exs. 1-7.  These amounts were derived primarily through revenue sharing, but Transamerica also imposed pro rata direct fees on participants if revenue sharing did not meet the required threshold.  *Id.*  In addition, Transamerica offered certain Transamerica funds to the Plan and received investment management fees for those investments.  *Id.*

**B.    Plaintiff and His Plan Investments.**

Plaintiff has participated in the Plan from 2017 through the present.  *See* Brand Del. ¶ 3, attached hereto as Ex. 8.  During this entire period, he invested in a single passively-managed target-date fund, the Vanguard Institutional Target Retirement 2035 fund.  *Id.* ¶ 4.

## III.    ARGUMENT

**A.    Plaintiff's Complaint Fails To State A Plausible Claim Under ERISA.**

To survive a 12(b)(6) motion to dismiss, a complaint must plead sufficient factual matter to render the legal claim "plausible," and the allegations must rise above the

8

"speculative" or "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). To be "plausible," a plaintiff's allegations must raise "more than the mere possibility of misconduct." *Divane*, 953 F.3d at 988 (quoting *Iqbal*, 556 U.S. at 679). Thus, where there are "two possible explanations, only one of which can be true and only one of which results in liability, plaintiff[] cannot offer allegations that are 'merely consistent with' [its] favored explanation but are also consistent with [an] alternative explanation." *White v. Chevron Corp.*, 752 F. App'x 453, 454 (9th Cir. 2018) ("*White III*") (citation omitted) (affirming Rule 12(b)(6) dismissal of similar ERISA claims for breach of fiduciary duty).

In the ERISA class action context, a motion to dismiss is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014); *Albert*, 2021 WL 3932029, at *1 (citing same). This is because "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value[.]" *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (citation omitted).

Much like the federal securities laws, ERISA was not enacted to provide "a partial downside insurance policy" for investors. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347-48 (2005) (discussing analogous securities claims). It was designed to "ensure that employees . . . receive the benefits they had earned" through "predictable set of liabilities" and "a system that is not so complex that administrative costs, or litigation expenses, unduly

9

discourage employers from offering ERISA plans in the first place." *Conkright v. Frommert*, 559 U.S. 506, 516-17 (2010) (citation omitted). Thus, a motion to dismiss "requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." *Dudenhoeffer*, 134 S. Ct. at 2471. ERISA's duty of prudence "is processed-based, not outcome-based." *Martin v. CareerBuilder, LLC*, No. 19-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). Accordingly, "the plaintiff must plausibly allege action that was objectively unreasonable"—i.e., that "no 'hypothetical prudent fiduciary' would have made the same objective choice[s]" being challenged in the case. *Divane*, 953 F.3d at 988 (quoting in part *Amgen Inc. v. Harris*, 577 U.S. 308, 311 (2016)); *Albert*, 2021 WL 3932029, at *1. These principles confirm that Plaintiff fails to state any plausible claims.

### 1. Plaintiff Does Not Plausibly Allege That Defendants Breached Their Fiduciary Duty of Prudence.

To state a viable claim for breach of the duty of prudence, Plaintiff must offer well-pleaded factual allegations demonstrating that Defendants did not act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Where an ERISA plaintiff fails to plead any facts regarding the actual process the fiduciaries used to select or review Plan investments and Plan service providers, as is the case here, the burden is even higher: the plaintiff must allege sufficient factual matter from which the Court can reasonably *infer* that the fiduciaries' process was impermissibly flawed. *See, e.g., Martin*, 2020 WL 3578022, at *4; *Albert*, 2021 WL 3932029, at *5, *6 (dismissing claims because "[w]ithout plausible allegations about Defendants' process, the Court cannot infer

10

imprudence merely because the Plan's recordkeeping fees were at the amounts alleged[,]"
and plaintiff's unsupported conclusory allegation that the selection of high-cost actively-
managed funds demonstrates the process must have been flawed was insufficient).  Plaintiff
has failed to do so with respect to any of his claims.

a.    **The Plan Offered Many of the Funds Plaintiff Endorses as "Prudent"; In Any Event, ERISA Does Not Prohibit the Offering of Actively-Managed Funds.**

Plaintiff claims that Defendants breached their fiduciary duties of prudence by
offering Plan participants the choice to invest in 15 actively-managed funds rather than his
hand-picked assortment of passively-managed "prudent alternative investments."  Compl
¶¶ 171-193.  This claim fails at the outset because nine of the index funds Plaintiff identifies
as "prudent alternatives," *id.* ¶173, **were** offered by the Plan throughout most of the alleged
class period.[4]  For example, beginning in 2016, the Plan replaced the JP Morgan
SmartRetirement 2020-2050 A funds and the JP Morgan SmartRetirement Income A Fund
with the Institutional share class of Plaintiff's own "prudent alternative investments," the
Vanguard Target Retirement 2020-2050 Investment Funds and the Vanguard Target
Retirement Income Investment Fund.  Compl. ¶ 173 (chart); *see* Ex. 9 (2016 Generac Form
5500); Exs. 3-7.  Further, the Institutional share class of the Vanguard Target Retirement
Funds that the Plan offered cost *less* than the Investment Share class of those funds that
Plaintiff identifies as prudent.  *Id.*  In addition, the "prudent alternative" Fidelity Emerging
Markets Index Fund replaced the Lazard Emerging Markets Core Equity Institutional Fund
between 2020 and 2021.  Compl. ¶ 193 (chart); *see* Ex. 7.  Plaintiff cannot credibly claim

---

[4] Plaintiff identifies the putative class period as June 8, 2015 through the present.  Compl. ¶¶ 4, 195.

11

that Defendants breached their duty of prudence by offering the *same* funds that Plaintiff claims should have been offered, and in a *lower-cost* share class for the Vanguard Target Retirement Funds. *Cf. White v. Chevron Corp.*, No. 16-0793, 2016 WL 4502808, at *18 (N.D. Cal. Aug. 29, 2016) ("*White I*") (rejecting argument that plan did not remove ARTVX fund soon enough because participants would have fared better in alternate investments offered by Vanguard).[5]

As for Plaintiff's challenge to the other six actively-managed funds in the Plan, the Seventh Circuit has held that it is not imprudent to include more expensive actively-managed funds alongside of other types of investments, as there is "nothing in [ERISA] that requires plan fiduciaries to include any particular mix of investment vehicles in their plan." *Hecker*, 556 F.3d at 586. Indeed, "[n]othing in ERISA requires [a] fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Id.*[6] Rather, what matters is that a plan "offer[s] a . . . mix of investments," *id.*, spanning a "range of options" at different levels of cost. *Loomis*, 658 F.3d at 670; *see also Divane*, 953 F.3d at 991 (rejecting allegation based on too many expensive investment options relative to low-cost index funds because the inclusion of some index funds

---

[5] The Court need not accept allegations that are directly contradicted by the documents referenced and relied upon in the Complaint. *See, e.g., Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

[6] *See also Kong v. Trader Joe's Co.*, No. 20-05790, 2020 WL 7062395, at *4 (C.D. Cal. Nov. 30, 2020), *appeal filed*, No. 20-56415 (9th Cir. Dec. 30, 2020) ("*Kong II*") ("There is nothing imprudent about offering a 'concentration of actively managed funds,' in particular where a plan 'offer[s] a variety of investment options that included low-cost options…'") (quoting *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 15-cv-1839, 2016 WL 7494320, at *15 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d Cir. 2017)).

"eliminat[ed] any claim that the plan participants were forced to stomach an unappetizing menu").

Here, the Plan did exactly that. In addition to the nine "prudent alternative" Vanguard and Fidelity index funds referenced above, the Plan also has offered the Vanguard Mid-Cap Growth Index Fund and the Fidelity 500 Index Fund. Exs. 1-7. And over the entire period at issue here, the Plan has offered 42 different investment options across various asset types and at different levels of cost with expense ratios ranging from 0.07% to 1.34% in 2015, and 0.02% to 1.33% in 2021. *See* Exs. 1-7. These fees fit comfortably within the range that the Seventh Circuit and other Circuits have held to be prudent. *See, e.g.*, *Divane v. Nw. Univ.*, No. 16-8157, 2018 WL 2388118, at *3 (N.D. Ill. May 25, 2018), (fees ranging from 0.05% to 1.89%), *aff'd*, 953 F.3d 980; *Hecker*, 556 F.3d at 586 (0.07% to "just over 1%"); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013) (fees ranging from 0.03% to 2.00%), *vacated on other grounds*, 575 U.S. 523 (2015); *White I*, 2016 WL 4502808, at *11 ("[t]he breadth of investments and range of fees [up to 1.24%] the Plan offered participants fits well within the spectrum that other courts have held to be reasonable as a matter of law"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 319, 327-28 (3d Cir. 2011) (fees ranging from 0.10% to 1.21%). Thus, the Court should dismiss Plaintiff's claims as to the offering of actively-managed funds in the Plan.

> **b.** **Plaintiff Cannot State a Viable Claim of Imprudence Based On Inappropriate Comparisons Of Investment Management Fees in Actively-Managed Versus Passively-Managed Funds.**

Plaintiff's challenge to the Plan's actively-managed funds also fails because passively-managed funds are not meaningful comparators to actively-managed funds.

13

"'[C]omparing apples and oranges is not a way to show that one is better or worse than the other,'" and an ERISA plaintiff cannot "'dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity.'" *Davis v. Wash Univ.*, 960 F.3d 478, 484-85 (8th Cir. 2020); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018).

Based on the fundamental differences between these two types of investment management, courts within the Seventh Circuit and elsewhere have repeatedly dismissed claims that actively-managed funds fees are imprudent compared to passively-managed funds. *See, e.g.*, *Albert*, 2021 WL 3932029, at *6-7 (dismissing claims that defendants breached their fiduciary duties by retaining certain actively-managed investments because comparisons showing actively-managed funds had higher fees than passively-managed funds could not establish imprudence, and there were no allegations regarding process for selecting and monitoring the funds); *Martin*, 2020 WL 3578022, at *3-4 (dismissing claims alleging that the plan should offer index funds); *Wash Univ.*, 960 F.3d at 484-85 (rejecting use of passively-managed fund as comparator to actively-managed funds with higher fees because "they have different aims, different risks, and different potential rewards that cater to different investors.").[7] This Court should reach the same result.

---

[7] *See also, e.g., Smith v. Commonspirit Health*, No. 20-95, 2021 WL 4097052, at *6-7, *9 (E.D. Ky. Sept. 8, 2021) (dismissing imprudence challenge to actively-managed funds because, *inter alia*, actively-managed funds and passively-managed index funds were not appropriate comparators); *Enos v. adidas America, Inc.*, No. 19-1073, R&R slip op. at 12-13 (D. Or. Aug. 26, 2021) (dismissing action alleging fees in T. Rowe Price actively-managed target date funds were too high when the only comparators offered were to passively-managed funds); *Klawonn v. Bd. of Dirs. for the Motion Picture Indus. Pension Plans*, No. 20-9194, 2021 WL 3508534, at *7-8 (C.D. Cal. Aug. 9, 2021) (dismissing claims because simply labeling funds as "comparable" is insufficient to establish those

Plaintiff also claims that the Plan failed to utilize his preferred share class with the alleged "lowest net expense" for four investments in the Plan (none of which Plaintiff selected as investments):  the American Funds EuroPacific Growth Fund, the Baird Aggregate Bond Fund, the FMI Common Stock Fund, and the JP Morgan Small Cap Equity Fund.  Compl. ¶¶ 129-169.  These allegations also fail to state a plausible claim.

The Seventh Circuit has affirmed the dismissal of similar claims that fiduciaries acted imprudently merely by failing to utilize a plaintiff's preferred share class.  For example, the *Divane* plaintiffs alleged that the fiduciaries were imprudent by failing to utilize lower-cost share classes in more than 100 different investment options.  *See Divane v. Nw. Univ.*, No. 16-cv-8157, Dkt. 38, Am. Compl. ¶ 161 (N.D. Ill. Dec. 15, 2016).  The court held that such allegations did not (alone or in combination with the other allegations) create any inference of imprudence.  *See Divane*, 953 F.3d at 992 (rejecting theory and reiterating that "plans may generally offer a wide range of investment options and fees without breaching any fiduciary duty"); *see also Loomis*, 658 F.3d at 670-72 (rejecting contention that only "institutional" share classes should be offered and no retail share classes because institutional funds have drawbacks, such as lower liquidity).  Numerous other courts have reached the same conclusion in dismissing plaintiffs' claims that plan fiduciaries failed to include certain "lower cost" investment share classes.  *See, e.g.*, *Albert*, 2021 WL 3932029, at *6 (rejecting plaintiff's argument that share classes were imprudent because they did not have the lowest

---

funds are meaningful benchmarks, and comparing actively-managed funds to passively-managed funds did not support a claim for imprudence).

net expense); *White II*, 2017 WL 2352137, at *14 (dismissing such claims because "ample authority holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach."), *aff'd*, *White III*, 752 F. App'x at 454-55; *Forman v. TriHealth, Inc.*, --- F. Supp. 3d ----, 2021 WL 4346764, at *7 (S.D. Ohio Sept. 24, 2021) (dismissing claims that fiduciaries failed to offer the "lower-cost share classes" of certain funds where plaintiffs alleged the only difference between the funds offered and the preferred funds was the fees but did not offer any further information on those preferred funds).

This authority alone dooms Plaintiff's share-class claim. But the claim also fails because the fee disclosures relied upon in the Complaint show that Plaintiff's allegations are – again – mostly **wrong**. For two of the challenged funds, the share classes used by the Plan *did* have the lowest net expenses, and in the third instance the difference was only 0.01%. Plaintiff incorrectly alleges that the Plan utilized the "Institutional" share class for the FMI Common Stock fund. Compl. ¶ 138. Plaintiff contends that the "Investor" share class for this fund was the only prudent option because even though the total cost is greater than the "Institutional" option's total cost, the "Investor" option credits a portion of its expense ratio to recordkeeping costs through revenue-sharing, so that participants pay less in net investment fees (0.61% vs. 0.90%). *Id*. at ¶¶ 153-161. However, the fee disclosures relied on in the Complaint (as stated in paragraph 139) plainly show that the Plan *did* use the "Investor" share class—not the "Institutional" share class. *See* Ex. 6 (2020 participant fee disclosure showing 1.01% expense ratio); Exs. 10-11 (2019, 2021 408b-2 disclosures showing 0.40% revenue sharing); Ex. 12 (2020 Generac Form 5500, Fin. Statement, at Supp.

Sch. C line 2(h)) (same). Because the Plan utilized Plaintiff's own lowest net investment expense "prudent alternative" share class for the FMI Common Stock fund, he has not alleged any facts that could show imprudence with respect to this fund. *See, e.g., Tobias v. NVIDIA Corp.*, No. 20-06081, 2021 WL 4148706, at *10 (N.D. Cal. Sept. 13, 2021) (rejecting challenge to share class because plan did offer the Plaintiff's preferred "K" share class of Fidelity Contrafund until 2018).

In addition, Plaintiff erred by failing to credit the revenue sharing in the utilized share class for two more of the challenged investments. Plaintiff alleges the "R-5" share class used by the Plan for the American Funds EuroPacific Growth fund has a gross investment expense of 0.51% (which is true as of 2021). Compl. ¶ 138. However, the fee disclosures and Form 5500s show that "R-5" share class also has 0.05% revenue sharing, not the 0% alleged in the Complaint. *Compare* Ex. 11 (2021 408b-2 fee disclosures); Ex. 12 (2020 Generac Form 5500 Fin. Statement, at Supp. Sch. C line 2(h)) *with* Compl. ¶ 138. When this revenue-sharing amount is taken into account, the "R-5" share class's actual "net investment expense" is 0.46%, not 0.51%, and is *lower by 0.03%* than the "net investment expense" of the alleged R-6 "prudent alternative" (0.49%), and by Plaintiff's own logic cannot be imprudent. Similarly, Plaintiff alleges the "Institutional" share class for the Baird Aggregate Bond fund has a net investment expense of 0.30%. Compl. ¶ 138. Plaintiff contends that the "Investor Class" for that fund was the only prudent option because it has lower net investment fees (0.27% vs. 0.30%). *See id.* But once again, Plaintiff failed to account for the fact that the "Institutional" share class has 0.02% in revenue sharing, not 0%. *Compare* Ex. 11 (2021 408b-2 fee disclosure); Ex. 12 (2020 Generac Form 5500 Fin. Statement, at Supp. Sch. C line

17

2(h)) *with* Compl. ¶ 138. When this revenue-sharing amount is applied, the "net investment expense" of the "Institutional" share class is only a single basis point higher than that of Plaintiff's alleged more "prudent alternative" (0.27% vs. 0.28%). *See Forman*, 2021 WL 4346764, at *7-8 (holding that another basis to dismiss share class claims was that the fee variances between the share class held by the plan and that preferred by plaintiff were "too small to raise a plausible breach of the fiduciary duty," with most variances less than .50%)

These plain errors, combined with the decisions discussed above, confirm that the Court should dismiss Plaintiff's share-class claim.

> **d.** **Plaintiff's Challenge To The Plan's Administrative And Recordkeeping Fee Structure Fails To State A Viable Claim.**

Plaintiff also claims the Plan paid too much in administrative fees, alleging a "reasonable" fee for RPS would have been $52 per participant, while the Plan paid (according to Plaintiff's calculations) $90 on average per participant. Compl. ¶¶ 105-109. These allegations once again fail to state a viable claim. ERISA does not require fiduciaries "to pick the least costly provider," whether for recordkeeping or any other administrative services, because "[c]ost is only one factor to be considered in selecting a service provider."[8] In fact, DOL guidance warns fiduciaries they *cannot* "consider fees in a vacuum" because "[t]hey are only one part of the bigger picture, including … the extent and quality of the services provided." *See* Dep't of Labor, A Look at 401(k) Plan Fees 9 (Sept. 2019),

---

[8] *See* Dep't of Labor, Employee Benefits Security Administration, *Tips for Selecting and Monitoring Service Providers for Your Employee Benefit Plan*, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/tips-for-selecting-and-monitoring-service-providers.pdf (last visited October 11, 2021).

https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited October 11, 2021).

In turn, the Seventh Circuit and other courts have correctly ruled that an ERISA plaintiff's fee-related criticisms of a plan's recordkeeper are meaningless where they are based on comparisons to other plans that are not comparable and recordkeepers that provided different services to those plans. *See, e.g.*, *Divane*, 953 F.3d at 990-91 (affirming dismissal where there were no facts alleged explaining "how a hypothetical lower-cost recordkeeper would perform at the level necessary to serve the best interests of the plans' participants"); *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009) ("*Hecker II*") (denying petition for rehearing and affirming Rule 12(b)(6) dismissal of ERISA fiduciary breach claim where, *inter alia*, there were no allegations about services participants received, and explaining that higher fees can be appropriate for extra services); *Albert*, 2021 WL 3932029, at *5 (granting motion to dismiss where "[plaintiff] allege[d] through charts, graphs, and tables that the same or different recordkeepers have accepted lower recordkeeping fees from similar plans," because there were no facts alleged demonstrating that fee charged was "excessive in relation to the services provided"); *Kong  II*, 2020 WL 7062395, at *6 (dismissing challenge to recordkeeping fees based on inapt comparators); *Tobias*, 2021 WL 4148706, at *14-15 (dismissing allegations of excessive recordkeeping fees in comparison with other similarly sized plans when failing to relate them to the specific services provided to the plan at issue); *Brown v. Daikin Am., Inc*., No. 18-11091, 2021 WL 1758898, at *8 (S.D.N.Y. May 4, 2021) (dismissing claim for excessive fees where complaint did not recognize the services provided by the recordkeeper, and therefore failed to demonstrate the fees were "'so

19

disproportionately large that [they bore] no reasonable relationship to the services rendered'") (citation omitted); *White II*, 2017 WL 2352137, at *16 (dismissing recordkeeping claims where Form 5500 for the plan showed that the challenged fees were "not only for recordkeeping services, but also for directed trustee services, participant-level investment advisory services, securities brokerage services, participant loan processing, and investment management fees.").

Here, Plaintiff's Complaint suffers the same shortcomings. Plaintiff points to a number of plans he claims had lower RPS fees and makes the conclusory allegation that they demonstrate imprudence because they were "similar" in terms of size and asset levels and received "similar" levels and quality of RPS services. Compl. ¶¶ 104-105. But Plaintiff's chart of these comparator plans (*id*. ¶ 104), and the data in the Form 5500s Plaintiff relied on in creating the chart, show that the comparator plans are not similar in size or the RPS services received.

**First,** in the chart itself, Plaintiff alleges that Generac's Plan had, on average, 2,880 participants and $115 million in assets from 2015 to 2019. *Id.* ¶¶ 103, 104. In contrast, the alleged comparators include plans with up to 7,318 participants and assets ranging from less than $100 million to over $800 million.[9] *Id.* ¶ 104.

**Second,** the 2018 Form 5500s Plaintiff relied upon for each "comparable" plan show that most of these plans paid fees to their recordkeepers for services that differed materially in nature and scope from the services provided by Transamerica to the Generac Plan. For

---

[9] Considering there are *thousands* of retirement plans in the marketplace with similar asset sizes and numbers of participants to the Plan here, Plaintiff's cherry-picked smattering of a handful of plans cannot serve as a meaningful fee benchmark or create an inference of imprudence.

20

example, Plaintiff compares the Generac Plan's fees against the fees paid by the H&E Equipment Services, Inc. 401(k) Profit Sharing Plan (the "H&E Plan"), claiming the Generac Plan paid an average of $90 per participant, while the H&E Plan paid only $64 per participant for the same services. Compl. ¶ 104. But the Generac 2018 Form 5500 lists codes for many *different* services that Transamerica provided to the Generac Plan, including investment management services (code 28), participant communication services (code 38), claims processing (code 12), recordkeeping and information management (codes 15 and 64), and participant loan processing (code 37), to name just a few. Ex. 13 (2018 Generac Form 5500, Sch. C at p.3).[10] In contrast, the 2018 Form 5500 for the H&E Plan shows that the recordkeeper (Voya) provided *only* recordkeeping services (code 64). Ex. 14 (2018 H&E Plan Form 5500, Sch. C at p.3). The comparison between fees paid for completely different services is meaningless.[11] *See Daikin Am., Inc.*, 2021 WL 1758898, at *8 (finding plaintiff's comparison between John Hancock's "excessive administrati[on] fees" and fees received by alternative recordkeepers was "illusory" because "as it pertained to the Plan, John Hancock was not only an administrative services provider, but also an investment manager for several

---

[10] Each service is identified by a corresponding service code in the Generac Plan's 2018 Form 5500, Schedule C. The explanations of the service codes are contained in the Dep't of Labor, EBSA, 2018 Instructions for Form 5500, at pp. 27, which is available at: https://www.dol.gov/sites/dolgov/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2018-instructions.pdf.

[11] This flaw is not unique to the H&E Plan comparison. *See also* Ex. 15, 2018 Form 5500 for the Crum & Forster Employee Savings Plan; Ex. 16, 2018 Form 5500 for the Associated Materials, LLC 401(k) Retirement Savings Plan; Ex. 17, 2018 Form 5500 for the Hitachi Vantara Corporation Retirement and Savings Program; Ex. 18, 2018 Form 5500 for the Boston Consulting Group, Inc. Employees' Profit-Sharing Retirement Fund; Ex. 19, 2018 Form 5500 for the Healthfirst Profit Sharing 401(k) Plan; Ex. 20, 2018 Form 5500 for the Mercedes-Benz USA, LLC Employees' Retirement Savings Plan; and Ex. 21, 2018 Form 5500 for the Smithfield Foods, Inc. Salaried 401(k) Plan.

of the Plan's investment funds."); *Young v. Gen. Motors Invest. Mgm't Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (affirming dismissal where "[p]laintiffs fail[ed] to allege that the fees were excessive *relative to the services rendered*") (emphasis added) (internal quotations and citations omitted).

Without similar recordkeeping comparators, Plaintiff is left with the unsupported allegation that an average RPS fee of $90 per participant is too high. But such fees are within the range that the Seventh Circuit and other courts have found to be reasonable. *See, e.g., Divane*, 953 F.3d at 984 (no claim based on fees averaging between $153 and $213 per participant); *Martin*, 2020 WL 3578022, at *4 (holding that recordkeeping fees of $131 to $222 per person "were not inconsistent with prudent portfolio management"); *Johnson v. PNC Fin. Servs. Grp.*, No. 20-1493, 2021 WL 3417843, at *2, *4-5 (W.D. Pa. Aug. 3, 2021) (granting motion to dismiss and holding that average annual per participant administrative fees of about $85 to $90, plus per participant recordkeeping fees of between $51 and $57, did not demonstrate breach of duty of prudence or loyalty). Thus, the Court should dismiss Plaintiff's RPS claim for this reason as well.

Finally, Plaintiff's allegation that Defendants were obligated to do a recordkeeping Request for Proposal ("RFP") (Compl. ¶¶ 89-90) does not state a viable claim because there is nothing in ERISA that requires fiduciaries to conduct RFPs. *See, e.g.*, *Divane*, 953 F.3d at 990 (rejecting fiduciary breach claim based on allegations that plan fiduciaries "should have solicited competitive bids for a fixed per-capita fee"); *White I*, 2016 WL 4502808, at *14 ("[N]othing in ERISA compels periodic competitive bidding."); *Tobias*, 2021 WL 4148706,

22

at *15 ("fiduciaries are under no obligation to regularly conduct competitive bidding for recordkeeping services").

## 2. Plaintiff Fails To State A Plausible Breach-Of-Loyalty Claim.

Counts One and Two of the Complaint allege breaches of both the duties of loyalty and prudence. A plaintiff "must do more than recast allegations of purported breaches of fiduciary duty [of prudence] as disloyal acts." *Albert*, 2021 WL 3932029, at *7. Because Plaintiff does not allege any facts that would suggest a loyalty breach, the Court should dismiss this claim as well. *See, e.g.*, *Loomis*, 658 F. 3d at 671 (affirming dismissal of disloyalty claims where complaint did not separately allege facts to show defendants selected investments "to enrich itself at participants' expense"); *Martin*, 2020 WL 3578022, at *6 (collecting cases).

## 3. Plaintiff Fails To State A Plausible Failure-To-Monitor Claim.

In Count Three and Four of the Complaint, Plaintiff alleges Defendants breached their duty to monitor other fiduciaries with respect to the Plan's investment management fees and RPS. Compl. ¶¶ 233-246. Plaintiff alleges no facts to support these claims and relies instead on the type of "threadbare" allegations that fail to satisfy the requirements of *Iqbal*, 556 at 680, and *Twombly*, 550 U.S. at 570. In addition, this claim is wholly derivative of Plaintiff's principal claims for fiduciary breach, which fail to state a claim for the reasons set forth above. Thus, the Court should also dismiss these claims. *See, e.g., Howell v. Motorola, Inc*., 633 F.3d 552, 563 (7th Cir. 2011); *Albert*, 2021 WL 3932029, at *7 (dismissing failure to monitor claims where plaintiff failed to state a claim for breaches of fiduciary duty of prudence or loyalty); *Rogers v. Baxter Int'l, Inc.*, 710 F. Supp. 2d 722, 740

23

(N.D. Ill. 2010) ("A failure to monitor claim is derivative in nature" and fails without an underlying breach of fiduciary duty).

**B.** **This Court Lacks Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1) Over Most of Plaintiff's Claims Due to Lack of Article III Standing.**

While the Court should dismiss the Complaint in its entirety under Rule 12(b)(6), Plaintiff also lacks Article III standing to pursue his investment-related claims, thus compelling dismissal of those claims under Rule 12(b)(1) as well.

**1.** **Applicable Legal Standards.**

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The mere act of filing a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 1547, n.6 (citation omitted). Similarly, the mere fact that an ERISA plan participant purports to sue in a derivative capacity "on behalf of the plan," as Plaintiff alleges here, does not absolve their obligation to "satisfy Article III's individualized-injury requirement." *Patterson*, 2019 WL 4934834, at *5. Plaintiff must separately demonstrate standing for "each claim" and "for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations and internal quotations omitted).

24

**2.      Plaintiff Suffered No Harm From The Plan's Investments And Thus Lacks Standing To Pursue Any Investment-Related Claims.**

Plaintiff purports to assert claims on behalf of the Plan under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2).  *See, e.g.* Compl. ¶¶ 194-95.  "[I]n a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Thole*, 140 S. Ct. at 1618.  If the plan fiduciaries select an imprudent fund for inclusion in the plan, that decision would harm *only* those plan participants who invested their individual account assets in that fund.  *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (claims under ERISA Section 502(a)(2) "authorize recovery for fiduciary breaches that impair the value of plan assets *in a participant's individual account*") (emphasis added); *see also Stanley v. George Wash. Univ.*, 394 F. Supp. 3d 97, 103 (D.D.C. 2019) (a plan participant may sue to recover for "fiduciary breaches that impair[ed] the value of plan assets in [her] individual account") (internal quotation marks and citation omitted) (alterations in original), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020).  Plaintiffs in an ERISA fiduciary breach case only satisfy Article III standing to the extent they seek redress for injuries that *they themselves* experienced, not generalized injuries to an ERISA plan in which they participated.  *See Thole*, 140 S. Ct. at 1619-20.

Here, the only fund in which Plaintiff invested, the Vanguard Institutional Target Retirement 2035 fund, is a *lower-cost* share class than the Investor Class of that fund, which he claims *is* prudent.  Ex. 8, Brand Decl. ¶ 4; Compl. ¶ 173.  Plaintiff has necessarily suffered no harm with respect to this fund.  *See Lange*, 2021 WL 3022117, at *3-4 (dismissing breach of fiduciary duty claims due to lack of Article III standing where plaintiff

did not challenge the one fund in which she invested – the Vanguard Target Retirement 2045 fund – and did not invest in any of the allegedly more expensive actively-managed funds she challenged); *cf. Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 858 F. App'x 432, 434 (2d Cir. 2021) (affirming dismissal of ERISA claims against plan for lack of standing, where plaintiffs were not themselves denied any benefits). As for the funds Plaintiff challenges as imprudent based on their share class or their active management, Compl ¶¶ 138, 153-64, 173, he invested in none of them, meaning he will receive "not a penny less" (or more) whether he wins or loses with respect to those claims. *Thole*, 140 S. Ct. at 1619.[12] Thus, the Court should dismiss all of Plaintiff's investment-related claims for lack of standing under Fed. R. Civ. P. 12(b)(1).

## IV. CONCLUSION

For the above reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

---

[12] While *Thole* involved a defined-benefit plan, even prior to *Thole* many courts have applied the standing principles set forth above to facts similar to those here in dismissing claims for lack of Article III standing. *See, e.g.*, *Patterson*, 2019 WL 4934834, at *5 ("Losses incurred by funds in which Plaintiffs did not invest cannot have impaired the value of Plaintiffs' individual accounts," meaning plaintiffs were not injured by inclusion of those funds); *Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, at *10 (D.D.C. 2019) (an ERISA plaintiff who does not invest in a challenged fund "has no standing to complain about its performance because he . . . has no injury to show"); *Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 16-1251, 2017 WL 2909714, at *6 (D. Conn. July 6, 2017) ("Because Ms. Dezelan did not own any general account stable value funds, she cannot show that any of [the fiduciary's] alleged misdeeds concerning those funds caused her to suffer a 'distinct and palpable injury,' and therefore lacks standing to bring all three causes of action to the extent that they relate to those products.") (citations omitted); *Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262, at *6 (W.D. Tenn. June 3, 2011) (plaintiff who "never had any holdings in the First Funds … [lacked] standing to sue for any breach of fiduciary duty as to the selection or retention of First Funds as an investment option"); *David v. Alphin*, 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011) (dismissing fiduciary breach claims concerning fund underperformance because no plaintiff participated in the challenged fund), *aff'd*, 704 F.3d 327 (4th Cir. 2013).

Respectfully submitted this 11th day of October, 2021.

MORGAN, LEWIS & BOCKIUS, LLP

By: */s/ Deborah S. Davidson*
    Deborah S. Davidson
    110 North Wacker Drive
    Chicago, IL 0606-1511
    Telephone:  (312) 324-1000
    Facsimile:  (312) 324-1001
    deborah.davidson@morganlewis.com

    Jeremy P. Blumenfeld
    1701 Market Street
    Philadelphia, PA  19103-2921
    Telephone:  (215) 963-5000
    Facsimile:  (215) 963-5001
    jeremy.blumenfeld@morganlewis.com

    OGLETREE, DEAKINS, NASH, SMOAK &
    STEWART, P.C.
    Kevin J. Kinney
    Bernard J. Bobber
    Pabst Boiler House,
    1243 North 10th Street, Suite 200
    Milwaukee, WI 53205
    Telephone: 414-239-6400
    kevin.kinney@ogletree.com
    bernard.bobber@ogletreedeakins.com

    *Attorneys for Defendants Generac Power*
    *Systems, Inc., and The Board of Directors of*
    *Generac Power Systems, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 11, 2021, a true and correct copy of the foregoing document was filed via the Court's ECF System.

*s/ Deborah S. Davidson*
Deborah S. Davidson