UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DERECK CASE,

    Plaintiff,

v.

Case No. 21-cv-1100-pp

GENERAC POWER SYSTEMS, INC.
and THE BOARD OF DIRECTORS OF
GENERAC POWER SYSTEMS, INC.,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (DKT. NO. 87) AND DISMISSING CASE WITH PREJUDICE**

The plaintiff—individually and as a representative of a class—has filed a second amended class action complaint alleging that the defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq.* Dkt. No. 86. The defendants have filed a motion to dismiss the second amended complaint for failure to state a claim. Dkt. No. 87. The court will grant the defendants' motion and dismiss this case with prejudice.

**I.    Background**

    A.    <u>Factual Background</u>

The following allegations are contained in the plaintiff's second amended complaint. Dkt. No. 86. The plaintiff is a participant in defendant Generac Power Systems, Inc.'s (Generac) 401(k) defined contribution retirement plan. <u>Id.</u>

1

at ¶¶1–2. Generac is the plan's fiduciary and has assigned the plan's administrative duties to its Benefit Plan Committee and that committee's members. Id. at ¶4. The plaintiff alleges that the defendants had a duty of prudence to plan participants, including the duty to regularly review the plan's funds to determine whether they are a prudent investment as well as to incur only reasonable costs and fees. Id. at ¶¶8–12. The plaintiff alleges that the defendants have violated their duty of prudence by incurring excessive recordkeeping and administrative fees and failing to remove their high-cost recordkeeper, Transamerica. Id. at ¶14.

The second amended complaint alleges that Generac manufactures power products and generators in Wisconsin. Id. at ¶32. The plaintiff worked for Generac Mobile Products, LLC—a subsidiary of Generac—from 2017 to 2021. Id. at ¶26. During that time, he participated in the defendants' plan. Id. at ¶27. The plaintiff seeks to represent a class of other participants in the defendants' plan "beginning June 8, 2015 and running through the date of judgment"—a class of an estimated 7,000 members. Id. at ¶¶105–06.

The plaintiff alleges that in 2021 there were approximately 6,953 participants in the defendants' plan, with $253,083,352 in assets under management. Id. at ¶37. Based on publicly available Form 5500 filings, he contends that in 2021, the defendants' plan had more participants than 99.76% of other defined contribution plans and more assets than 99.41% of other defined contribution plans. Id. The plaintiff identifies the defendant's

plan as a "large 401(k) Plan," which he says is a plan with between $250 million and $500 million in assets. Id. at ¶31.

The plaintiff alleges that large 401(k) plans like the defendants' hire a "recordkeeper" to provide various services to the plan. Id. at ¶39. He asserts that "[t]here are numerous recordkeepers in the marketplace who are *equally* capable of providing a high level of service" to the defendants' plan. Id. at ¶40 (emphasis in original). The plaintiff identifies three types of services provided by all recordkeepers: "Bundled RKA" (recordkeeping and administrative) services, "A La Carte services" and "Ad Hoc" fees. Id. at ¶¶42–43, 50, 52. The plaintiff alleges that "Bundled RKA" services include recordkeeping, transaction processing, administrative services, participant communications, maintenance of an employer stock fund, plan document services, plan consulting services, accounting and audit services, compliance support and testing and trustee/custodian services. Id. at ¶43. "A La Carte services" have "separate, additional fees" based on the individual plan participant's usage. Id. at ¶50. These services can include loan processing, brokerage services/account maintenance, distribution services and processing of qualified domestic relations orders. Id. "Ad Hoc" fees include transaction fees and "other administrative fees" incurred by the plan. Id. at ¶52. The plaintiff states that the combination of these three sets of fees equals what he calls the "total RKA fees." Id. at 54.

According to the plaintiff, recordkeeping services are "commoditized" and "essentially fungible" such that the distinguishing factor in the marketplace

3

between recordkeepers is price. Id. at ¶¶48–49. The plaintiff alleges that the Bundled RKA fee rate is the primary consideration when plan administrators compare fees to select a recordkeeper. Id. at ¶57.

The plaintiff alleges that the defendants had a duty to engage in an "independent evaluation" of their recordkeeper's pricing, to solicit competitive bids to determine whether the current recordkeeping fees are reasonable and to change recordkeepers if the fees are unreasonable. Id. at ¶¶66–75. The plaintiff contends that the defendants failed to do this. Id. at ¶¶77–79. He says that by not replacing their recordkeeper, Transamerica, the defendants allowed Transamerica to charge "objectively unreasonable fees for Bundled RK&A services" for at least ten years. Id. at ¶82.

The plaintiff compares the defendants' recordkeeping fees to the recordkeeping fees incurred by allegedly "comparable plans of similar large sizes with similar amounts of money under management, receiving a materially identical level and quality of Bundled RKA services." Id. at ¶83. He asserts that the defendants' recordkeeping fees, which he places at an average annual fee of $85 per participant from 2015 to 2022, were unreasonable when compared with the recordkeeping fees of comparable plans, which ranged from $29 to $75 per participant. Id. at ¶¶80, 83. After plotting these data points on a chart, the plaintiff argues that based on the comparator plans' average fees, a "reasonable fee" for the plan would have been $49 per participant. Id. at ¶¶86, 89. He claims that over the class period, the alleged failure to replace Transamerica with a recordkeeper that charged less cost plan participants over

4

$1.1 million in "unreasonable and excessive" fees. Id. at ¶94. The plaintiff contends that this correlates to an overall loss of $1.9 million "when accounting for compounding percentages/lost market investment opportunity." Id. at ¶95. The plaintiff alleges that the defendants must have failed to conduct competitive bidding for recordkeeping services and failed to negotiate rebates from Transamerica for the excessive fees. Id. at ¶99.

The plaintiff brings two claims against the defendants on behalf of the putative class of plan participants. First, the plaintiff alleges that the defendants breached their duty of prudence by failing to ensure that the plan's recordkeeping fees were reasonable and by failing to monitor and evaluate their recordkeeper's performance. Id. at ¶¶113–23. Second, the plaintiff alleges that the defendants failed to adequately monitor and evaluate the committee responsible for selecting the plan's recordkeeper and monitoring associated recordkeeping fees. Id. at ¶¶124–130. The plaintiff seeks a declaratory judgment that the defendants breached their fiduciary duties as well as an order requiring the defendants to restore all losses the plan incurred due to their breach and disgorge any profits received from the breach. Id. at 28. He also seeks an injunction preventing the defendants from committing further breaches of fiduciary duty, and attorneys' fees and costs. Id.

B.  Procedural Background

The plaintiff originally filed this case in the United States District Court for the Western District of Washington. The defendants moved to transfer the case to this district, dkt. no. 25, and the district court granted that motion,

5

dkt. no. 35. After transfer, the defendants moved to dismiss the complaint. Dkt. No. 43. In lieu of filing a response, the plaintiff filed an amended complaint. Dkt. No. 46. The defendants then filed a motion to dismiss the amended complaint for lack of jurisdiction and failure to state a claim. Dkt. No. 55. The defendants' motion relied heavily on the Seventh Circuit's decision in Divane v. Northwestern University, 953 F.3d 980 (2020). Dkt. No. 56. Ten days after the plaintiff filed his response to the defendants' motion to dismiss, the Supreme Court vacated the Seventh Circuit's decision in Divane and remanded the case for further proceedings. Hughes v. Northwestern University, 595 U.S. 170 (2022). The defendants then filed their reply brief in support of the motion to dismiss, acknowledging Hughes but arguing that it did not compel denying their motion. Dkt. No. 61. The parties later sought leave to file sur-reply and sur-sur-reply briefs regarding Hughes, dkt. nos. 62, 63, which the court granted, dkt. no. 64.

After this briefing was completed, the plaintiff filed a motion for leave to file a second amended complaint. Dkt. No. 70. Before the court had addressed the then-pending motions, the parties sought leave to file even more supplemental briefs on the motion to dismiss to address the Seventh Circuit's post-remand decision in Hughes v. Northwestern University, 63 F.4th 615 (7th Cir. 2023) (Hughes II). Dkt. No. 75. The court granted that motion and directed the parties to file short, supplemental briefs on the impact of Hughes II. Dkt. No. 76.

But on April 17, 2023—the day before the parties' supplemental briefs on Hughes II were due—the plaintiff filed a new motion for leave to file a second amended complaint, dkt. no. 80, a new proposed second amended complaint, dkt. no. 80-1, and notice that he was withdrawing his previous motion for leave to file a second amended complaint, dkt. no. 79. In the new motion for leave to file a second amended complaint, the plaintiff asserts that, "[i]n light of the recent decision in *Hughes II*, [he] . . . prepared a [new] Second Amended Complaint which he believes satisfies the 7th Circuit's standard in *Hughes II*." Dkt. No. 80 at ¶12. Because the applicable law had shifted multiple times since the plaintiff had filed his amended complaint, the court granted the plaintiff's motion for leave to file a second amended complaint and denied as moot the defendants' motion to dismiss. Dkt. No. 85.

The second amended complaint raises a duty of prudence claim and a derivative claim for failure to monitor plan fiduciaries regarding plan recordkeeping and administrative fees. Dkt. No. 86 at ¶¶6–7. On April 26, 2024, the defendants filed a motion to dismiss the second amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 87. The defendants' motion has been fully briefed since June 10, 2024. Dkt. Nos. 88 (initial brief), 89 (opposition brief), 92 (reply brief). The plaintiff also filed two notices of supplemental authority from other courts that ruled on motions to dismiss similar claims. Dkt. Nos. 93, 94.

7

Case 2:21-cv-01100-PP   Filed 08/13/25   Page 7 of 20   Document 95

## II. Legal Standards

The defendants have moved to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6), which allows a party to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendants is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court takes "all the factual allegations in the complaint as true," Ashcroft v. Iqbal, 556 U.S. 662 (2009), and draws all reasonable inferences in the plaintiff's favor, Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016).

To state a claim for a breach of the duty of prudence under ERISA, the plaintiff must allege "(1) that the defendant[s] [are] a plan fiduciary; (2) that the defendant[s] breached [their] fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." Albert v. Oshkosh Corp., 47 F.4th 570, 579 (7th Cir. 2022) (quoting Allen v. GreatBanc Tr. Co., 835 F.3d 670, 678 (7th Cir. 2016)). To plead breach, "a plaintiff must plausibly allege fiduciary decisions outside a

8

range of reasonableness." Hughes II, 63 F.4th at 630. "How wide that range of reasonableness is will depend on 'the circumstances . . . prevailing' at the time the fiduciary acts." Id. (quoting Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014)). Where unreasonable recordkeeping fees serve as the basis of a claim of breach, the plaintiff must plead plausible facts showing that the defendants "incurred unreasonable recordkeeping fees and failed to take actions that would have reduced such fees." Id. at 631.

### III. Analysis

The defendants advance several arguments: (1) the comparator plans identified in the complaint are not sufficiently comparable in size and assets to the defendants' plan to create a meaningful benchmark of reasonable fees; (2) the plaintiff uses the plan's average fees over eight years as a benchmark, without acknowledging that the plan's fees decreased significantly during that period; (3) the complaint compares only a subset of fees charged by the comparator plans to the total fees charged by the defendants' plan; and (4) the defendant did not err by failing to conduct competitive bidding for RKA services because there is no requirement to do so under ERISA. Dkt. No. 88 at 6–8.

    A.    <u>Excessive Recordkeeping Fees</u>

        1.    *Parties' Arguments*

The defendants argue that the court must dismiss the second amended complaint because the plaintiff has failed to create a meaningful benchmark of reasonable recordkeeping fees to compare to the defendant's plan. Dkt. No. 88 at 15. According to the defendants, the plaintiff alleges that all "large plans"

9

(plans with $250 million to $500 million in assets) receive "materially identical" Bundled RKA services, but the defendants' plan and almost all of the comparator plans the plaintiff identifies were not "large plans" during the class period. Id. at 15–16. The defendants assert that in 2021, their plan had $250 million in assets, but for every other year of the putative class period, the plan had fewer assets. Id. at 16. The defendants argue that seven out of ten of the comparator plans fall outside of the definition of "large plans." Id. They contend that Judge William C. Griesbach and Magistrate Judge Stephen C. Dries rejected a complaint in a similar case where only two of the plaintiff's thirteen comparator plans fit within the plaintiff's definition of a large plan. Id. (quoting Cotter v. Matthews Int'l Corp., Case No. 20-CV-1054, 2023 WL 9321285, at *5 (E.D. Wis. Aug. 9, 2023), report and recommendation adopted, 2024 WL 218417 (E.D. Wis. Jan. 19, 2024)). The defendants argue that the second amended complaint in this case fails to state a claim for this reason alone, because there are no plausible allegations that the defendants' plan and the comparator plans received the same recordkeeping services. Id. at 17.

The defendants argue that the comparator plans are not similar enough to the defendants' plan to form a meaningful basis of comparison. Id. They point to recent district court decisions finding that comparator plans identified in the complaint were too different from the defendants' plans in number of participants or assets under management. Id. at 17–18 (citing Laabs v. Faith Techs., Inc., Case No. 20-CV-1534, 2023 WL 9321358 (E.D. Wis. Aug. 30, 2023), report and recommendation adopted, 2024 WL 218418 (E.D. Wis. Jan.

10

19, 2024); Guyes v. Nestle USA, Inc., Case No. 20-CV-1560, 2023 WL 9321363 (E.D. Wis. Aug. 23, 2023), report and recommendation adopted, 2024 WL 218420 (E.D. Wis. Jan. 19, 2024)). According to the defendants, the comparator plans here are different enough in terms of participants and assets that they are not comparable to the defendants' plan. Id. at 18–19. The defendants argue that the court must dismiss the second amended complaint because absent a meaningful benchmark from comparator plans, there are no allegations supporting an inference that the defendants' recordkeeping fees were unreasonable. Id. at 19–20.

The defendants argue that the plaintiff's comparisons also are misleading because the plaintiff improperly compares average fees to single-year fees. Id. at 20. The defendants argue that in Cotter, the court rejected an "apples-to-oranges comparison[]" where the plaintiff compared the defendants' average plan fees to comparator plans' fees in specific, later years. Id. (citing 2023 WL 9321285, at *5). The defendants contend that here, the plaintiff compares an eight-year average of the defendants' plan fees to the comparator plans' fees in single years, specifically 2021, 2020 and 2019. Id. at 21. The defendants argue that this comparison is especially problematic here, where the defendants significantly reduced plan fees over the class period. Id.

The defendants also object to how the plaintiff has calculated the recordkeeping fees identified in the second amended complaint. Id. The defendants argue that the plaintiff excludes certain subsets of fees from his calculation of the comparator plans' Bundled RKA fees, artificially inflating the

11

disparity between the defendants' plan and the comparator plans. Id. at 22–23. The defendants reason that the plaintiff is not making a "like-to-like comparison" of recordkeeping fees sufficient to support an inference of imprudence. Id. at 23 (citing Mateya v. Cook Grp. Inc., Case No. 22-CV-1271, 2023 WL 4608536, at *7 (S.D. Ind. June 16, 2023)). And the defendants contend that despite the plaintiff's assertions to the contrary, the defendants have no duty to solicit competitive bids for recordkeepers. Id. at 23–24 (collecting cases).

The plaintiff responds that because the defendants' plan has more participants and assets than 99.76% of other defined-contribution plans, finding comparator plans is exceptionally difficult. Dkt. No. 89 at 14. According to the plaintiff, setting too high a standard for comparators would create a pleading hurdle for both exceptionally large and exceptionally small plans. Id. The plaintiff contends in contrast to Laabs and Guyes, where the differential in size was much greater, he has provided "relatively close matches given the Plan's exceptional size." Id. (quoting Dionicio v. U.S. Bancorp, Case No. 23-CV-26, 2024 WL 1216519, at *3 (D. Minn. Mar. 21, 2024)). The plaintiff argues that the comparator plans are among the "closest 0.57%" to the defendants' plan based on publicly available data. Id. at 14–15.

The plaintiff argues that he sufficiently has alleged that the recordkeeping fees charged were excessive compared to the services rendered. Id. at 15. He contends that he need not identify the services used by the defendants' plan and the comparator plans. Id. at 16. The plaintiff asserts that

12

his allegations that each recordkeeper's services are fungible and commoditized are sufficient to establish what the other plans' recordkeeping fees are for comparable services. Id. at 16–17. He maintains that other courts have found these allegations sufficient to establish the comparability of recordkeeping services among comparator plans. Id. at 18 (collecting cases).

The plaintiff also argues that he properly calculated the Bundled RKA fees. Id. The plaintiff says that the defendants challenge calculations based on the information in Form 5500 disclosures, but that those forms do not provide the data that supports his claims in the second amended complaint. Id. at 18–19. He asserts that he relied not on Form 5500 disclosures, but on §404(a)(5) participant disclosure forms. Id. The plaintiff argues that if the court accepts as true his allegations that all recordkeepers provide basically the same services and yet the defendants paid "unreasonably" higher fees than comparable plans, he has sufficiently plead facts to infer that the defendants violated their duty of prudence. Id. at 19–20.

The defendants reply that the plaintiff didn't respond to several of the arguments in their brief. Dkt. No. 92 at 5. They contend that the plaintiff has not explained why he compares the plan's average fees to various single-year fees for the comparator plans, nor has he addressed the fact that he calculated some comparator plans' fees differently. Id. 5–6. They argue that the plaintiff's failure to respond means that he concedes the points. Id. at 9. The defendants argue that the source of the plaintiff's data is irrelevant when it is clear that he excluded certain fees from his calculations, making the comparator plan fees

13

Case 2:21-cv-01100-PP   Filed 08/13/25   Page 13 of 20   Document 95

appear lower than they actually are. Id. at 10–11. The defendants argue that the complaint's allegations that RKA services are "fungible" for large plans do not save the second amended complaint because the defendants' plan and several comparator plans are not "large plans." Id. at 15–16. They argue that the plaintiff has not alleged anything about the types and quality of services provided to plans that hold fewer than $250 million in assets, so there is no way to judge whether the comparator plans received the same services as the defendants' plan. Id. at 16.

   2. *Analysis*

Under ERISA, the plaintiff may create an inference of unreasonable fees by pleading examples of comparator plans that receive the same recordkeeping services as the defendants' plan but pay lower recordkeeping fees. See Hughes II, 63 F.4th at 632. There must be allegations "as to the quality or type of recordkeeping services the comparator plans provided," id. (quoting Albert, 47 F.4th at 579), for the plaintiff to sufficiently plead that "the fees were excessive relative to the recordkeeping services rendered," id. (citing Smith v. CommonSpirit Health, 37 F.4th 1160, 1169 (6th Cir. 2022)). In Hughes II, the Seventh Circuit found the plaintiffs' allegations sufficient where

> plaintiffs here assert "[t]here are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to *large defined contribution plans like the Plans*." So, plaintiffs maintain that the quality or type of recordkeeping services provided by competitor providers are comparable to that provided by Fidelity and TIAA. Plaintiffs also plead that because recordkeeping services are "commoditized … recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, *particularly for jumbo plans*

14

> *like the Plans.*" In short, plaintiffs allege that recordkeeping services are fungible and that the market for them is highly competitive.

Id. (emphasis added).

Here, the second amended complaint contains similar allegations that "[t]here are numerous recordkeepers in the marketplace who are *equally* capable of providing a high level of service to large defined contribution plans like the Generac Plan," dkt. no. 86 at ¶40 (emphasis in original), and "[b]ecause RKA services are commoditized, recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for large plans like the Plan," id. at ¶48. Under Hughes II, the second amended complaint sufficiently pleads that recordkeeping services for large plans are commoditized and fungible, meaning that all large plans receive comparable recordkeeping services.

The plaintiff defines a large plan as "a plan with around $250 million dollars or more in assets" or a plan with "between $250 million and $500 million in assets." Id. at ¶31. The defendants contend that the defendants' plan and most of the comparator plans fall outside of this definition for some or all of the class period. This mismatch dovetails into the biggest flaw in the second amended complaint: the plaintiff is not comparing apples to apples.

The second amended complaint contains the estimated RKA fees for the defendants' plan for 2015 through 2022. Id. at ¶80. The plaintiff calculates the average annual RKA fee per participant over that eight-year period as $85. Id. The second amended complaint does not explicitly state this, but it appears that the plaintiff compares that $85 *average* fee to the comparator plans' per

15

participant fees in *specific, unidentified years*. The defendants contend that the comparator plans' fees are from 2021, 2020 and 2019. Dkt. No. 88 at 21. This is not a fair comparison, because what constitutes a "reasonable" recordkeeping fee may vary from year to year due to inflation or other marketplace factors. See Mateya, 2023 WL 4608536, at *8 ("prices change year-to-year, so costs in one year are not necessarily comparable to costs in another, much less to costs averaged over multiple years.").

The alleged recordkeeping fees from the comparator plans range from $29 to $75. Id. at ¶83. The defendants' per-participant RKA fees range from a high of $132 in 2016 to a low of $62 in 2021 and 2022. Dkt. No. 86 at ¶80. Perhaps a reasonable fee in 2016 was higher than a reasonable fee in 2021 and 2022. If the comparator plan fees all were from 2016, the defendants' plan fee of $132 in 2016 might be excessive. But if those data points were from 2021 or 2022, the defendants' plan fee of $62 may be within the range of reasonableness. Although a comparator plan's 2016 RKA fees might suggest that the defendants' *2016 expenses* were unreasonable, it says nothing about whether the defendants' *2016 to 2022 expenses* were unreasonable. The plaintiff needed to compare the average fees over the class period *or* the annual fees in a specific year to create a meaningful benchmark of comparison. See Cotter, 2023 WL 9321285, at *5 (recommending dismissal where the plaintiff compared the defendants' average plan fee "paid over five years (2014 to 2018) with the fees paid by the comparator plans in just one year"); Mateya, 2023 WL 4608536, at *8 (dismissing complaint where the plaintiff compared a seven-

16

year average fee to the single year fees of the comparators); England v. DENSO Int'l Am., Inc., No. 22-11129, 2023 WL 4851878, at *4 n.7 (E.D. Mich. July 28, 2023) ("Another issue with Plaintiffs' basis of comparison is that they compare the DENSO plan's average RKA fee per participant over a period of four years (2016–2020) to the 15 comparator plans' RKA fee per participant in a single year"), aff'd sub nom. England v. DENSO Int'l Am. Inc., 136 F.4th 632 (6th Cir. 2025); Jones v. Dish Network Corp., No. 22-cv-00167, 2023 WL 2796943, at *9–10 (D. Colo. Jan. 31, 2023) (recommending dismissal where the plaintiff compared the average fee paid by the plaintiff's plan with the fees paid by comparator plans in one selected year), report and recommendation adopted, 2023 WL 2644081 (D. Colo. Mar. 27, 2023).

Because the plaintiff compares the defendants' average fees over the class period to comparators' fees in specific years, the plaintiff has not created a plausible inference that the defendants' plan fees were excessive compared to comparable large 401(k) plans. Absent an inference that the defendants paid excessive recordkeeping fees, the second amended complaint fails to state a claim for a breach of the duty of prudence. The court will grant the defendants' motion to dismiss Count I of the second amended complaint.

B. Failure to Monitor

The defendants argue that because the plaintiff's failure to monitor claim is wholly derivative of his duty of prudence claim, the duty-to-monitor claim must fail if the underlying duty of prudence claim fails. Dkt. No. 88 at 24 (collecting cases). The plaintiff agrees that the fates of the two claims are

17

entwined. Dkt. No. 89 at 20. "[D]uty to monitor claims rise or fall with [] duty of prudence and duty of loyalty claims." Albert, 47 F.4th at 583 (citing Rogers v. Baxter Int'l Inc., 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)); see also Remied, 2024 WL 3251331 at *14 (denying motion to dismiss failure to monitor claim where the plaintiff stated a viable duty of prudence claim). Because the court is dismissing the plaintiff's duty of prudence claim regarding excessive recordkeeping fees, the court also will grant the motion to dismiss as to the derivative failure to monitor claim (Count II of the second amended complaint).

    C.    Dismissal with Prejudice

The defendants argue that the complaint should be dismissed with prejudice. Dkt. No. 88 at 25. They contend that the plaintiff has filed three complaints in this case and that there have been "three different rounds of motion to dismiss briefing and two rounds of leave to amend briefing, with 13 briefs and motions filed (not including this brief) and seven notices of supplemental authority." Id. The defendants say that other courts in this circuit have dismissed complaints with prejudice under similar circumstances. Id. (citing Cotter, 2024 WL 218417, at *1; Laabs, 2024 WL 218418, at *1; Guyes, 2024 WL 218420, at *1). The plaintiff did not respond to this argument.

In Cotter, Judge Griesbach adopted Magistrate Judge Dries's report and recommendation to dismiss the second amended complaint and rejected the plaintiff's request for leave to file a third amended complaint to add new comparator plans. Cotter, 2024 WL 218417, at *1. Judge Griesbach stated that the case had "already been through two rounds of motions to dismiss" and that

the plaintiff did "not explain why she could not have included [ ] comparators in an earlier complaint." Id. (citing Hukic v. Aurora Loan Servs., 588 F.3d 420, 431 (7th Cir. 2009)); see also Laabs, 2024 WL 218418, at *1 (same); Guyes, 2024 WL 218420, at *1 (same).

The court will dismiss this case with prejudice because this is the plaintiff's fourth version of his complaint and he has not requested leave to amend again. When the plaintiff filed his second amended complaint, he did so with the benefit of the guidance provided in the Seventh Circuit's decision in Hughes II and contended that his second amended complaint "[met] the clarified pleading standard under *Hughes II*." Dkt. No. 80 at ¶6. The court has determined that the second amended complaint does not meet that standard. The plaintiff's brief did not squarely address the defendants' argument about the mismatch in comparing the defendants' average fees over the class period to comparators' fees in specific years, nor did it explain why the plaintiff could not have presented an apples-to-apples comparison of fees in the second amended complaint. See Hukic, 588 F.3d at 432 (affirming denial of leave to amend complaint where the plaintiff had the necessary information he sought to add to the complaint "long before he sought leave to amend"). The court will take the same approach that Judge Griesbach took in Cotter, Laabs and Guyes and dismiss the second amended complaint with prejudice.

IV. Conclusion

The court **GRANTS** the defendants' motion to dismiss the second amended complaint. Dkt. No. 87.

19

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**.

The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 13th day of August, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**